UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KARINA ALBINO TITO,

Plaintiff,

v.

MARKWAYNE MULLIN[1], et al.,

Defendants.

Case No.  26-cv-02178-TLT

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2

Pending before the Court is Petitioner-Plaintiff Karina Albino Tito's *Ex Parte* Motion for Temporary Restraining Order.  ECF 2.  Petitioner-Plaintiff requests that the Court enjoin Respondents from increasing supervision and detaining Petitioner-Plaintiff.  *Id.* at 1. In the event Petitioner-Plaintiff is re-detained by Respondent, Petitioner-Plaintiff requests that the Court retain jurisdiction and prohibit the government from transferring Petitioner-Plaintiff out of this District and removing them from the country until these habeas proceedings have concluded.  *Id.*  For the reasons stated below, the Court **GRANTS** Petitioner-Plaintiff Albino Tito's Motion for Temporary Restraining Order.

## I.    BACKGROUND

Petitioner-Plaintiff Karina Albino Tito ("Petitioner-Plaintiff")[2] is a native and citizen of Peru.  ECF 1-2, Declaration of Karia Albino Tito ("Albino Tito Decl.") ¶ 1.  Petitioner-Plaintiff

---

[1] Respondents note that Kristi Noem is the Secretary of Homeland Security until March 31, 2026, and, thus, Markwayne Mullin is improperly named in this action. Petitioner-Plaintiff acknowledges that Markwayne Mullin was indeed named in error. Accordingly, Markwayne Mullin is dismissed as a named Respondent in this action.

[2] Throughout Petitioner-Plaintiff's Petition for Writ of Habeas Corpus and Temporary Restraining Order application, Petitioner-Plaintiff most frequently uses "they," "them" and "their" pronouns. Accordingly, the Court employs the same throughout this Order.

first entered the United States on July 1, 2024.  ECF 1-9.  Petitioner-Plaintiff and their partner were detained by immigration officials when they crossed the border.  ECF 1, Petition for Writ of Habeas Corpus, ¶ 32.  Subsequently, on August 30, 2024, Petitioner-Plaintiff was released from custody on Parole.  *Id.*  In being released, Respondent had determined that Petitioner was neither a flight risk nor danger to the community to warrant detention.  *Id.* ¶ 37.

Petitioner-Plaintiff was given a Notice to Appear for removal proceedings at Immigration Court.  *Id.* ¶ 32. On the Notice to Appear, DHS classified Petitioner as "an alien present in the United States who has not been admitted or paroled" and did not classify them as an "arriving alien."  *Id.* DHS charged her as inadmissible only under 8 U.S.C. §1182(a)(6)(A)(i), which applies to noncitizens physically present in the country without admission or parole and to noncitizens who enter the country in a location not designated by the Attorney General.  *Id.*

Petitioner-Plaintiff was issued an "Interim Notice Authorizing Parole" which set conditions of Petitioner-Plaintiff's conditional parole status.  *Id.* ¶ 32.  Petitioner-Plaintiff was required to attend "every scheduled hearing before the immigration court and every appointment as directed by ICE," comply with State Federal or local laws, and comply with other specified conditions.  *Id.*  For example, Petitioner-Plaintiff was enrolled in the ATD (Alternatives to Detention) monitoring program which required Petitioner-Plaintiff to report to the ICE office in San Francisco.  *Id.*

On February 17, 2025, Petitioner-Plaintiff filed an application for political asylum withholding of removal, and protection against the Convention Against Torture with the Immigration Court, which remains pending.  *Id.* ¶ 35.  Plaintiff also applied for and received work authorization.  *Id.*  They work as a caregiver in Oakland.  *Id.*

Petitioner-Plaintiff was required to comply with all Intensive Supervision Appearance Program (ISAP) and ICE check-in requirements, both via mobile app SmartLink App and in person.  *Id.* ¶ 36. Upon their release from detention, they were issued a monitoring bracelet which they wore until their first in person ICE check in on August 29, 2025.  *Id.*

On February 12, 2026, Petitioner-Plaintiff changed their phone number and immediately reported this change within the app.  *Id.*  After experiencing technical difficulties in reinstalling

the app, by February 27, 2026, Petitioner-Plaintiff was again receiving notification. *Id.*

Since that appointment, they have fully complied with their new weekly reporting schedule, checking in every Monday for the last two weeks. *Id.* Petitioner-Plaintiff asserts that nothing has changed to alter Respondent's initial determination that Petitioner-Plaintiff is neither a flight risk nor danger to the community. *Id.* Petitioner-Plaintiff has no criminal history. *Id.* ¶ 35.

Respondents scheduled Petitioner-Plaintiff for an ISAP check-in appointment the of morning, Friday March 13, 2026. ECF 2 at 4. Petitioner-Plaintiff believed they would be detained at this check-in. *Id.* Petitioner-Plaintiff insists that their technical difficulties with the SmartLink App do not constitute a material change in circumstances to justify their re-detention. *Id.*

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation

3

marks and citations omitted).  "[W]hen the Government is the opposing party," the final two factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III.    DISCUSSION

The Government argues that Petitioner-Plaintiff's requested relief should be denied because Petitioner (1) lacks Article III standing and (2) presents claims that are not ripe as Petitioner-Plaintiff has not yet been detained. ECF 9 at 3.

The Court also finds that Plaintiff-Petitioner (A) has demonstrated that they will likely succeed on the merits of their claim; (B) will likely suffer irreparable harm in the absence of preliminary relief; and (C) the balance of equities and the public's interest weigh in favor of granting relief.

### A.    Plaintiff has Standing to Pursue Prospective Relief

To seek prospective relief, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Plaintiffs do not lack standing where an agency "ha[s] likely adopted a policy and practice" that it continues to enforce, "plaintiffs are likely among those targeted," and plaintiffs "likely cannot avoid" the conduct that will lead to injury. *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3417, 2025 WL 3465518, at *16 (D.D.C. Dec. 2, 2025). "All these considerations crystallize the 'reality of the threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1993)); *see also Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 979 (D. Ariz. 2011), *aff'd sub nom. Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ("[E]xposure to [the challenged] policy is both itself an ongoing harm and evidence that there is 'sufficient likelihood' that Plaintiffs' rights will be violated again.")

There is no shortage of cases in this district recognizing and rejecting DHS's practice of arresting and detaining noncitizens without a pre-deprivation hearing or findings of material changes in circumstances.  *See e.g., Llanes Tellez v. Bondi*, No. 25-CV-08982, 2025 WL 3677937, at *5 (N.D. Cal. Dec. 18, 2025); *Claros v. Albarran*, No. 25-CV-09473, -- F.Supp.3d --, 2025 WL

United States District Court
Northern District of California

3458888 (N.D. Cal. Dec. 2, 2025); *Roa v. Albarran*, No. 25-cv-07802, 2025 WL 2732923, at *1 (N.D. Cal. Sept. 25, 2025); *Larrios v. Albarran*, No. 25-cv-08799, 2025 WL 3043391, at *7-8 (N.D. Cal. Oct. 31, 2025). This Court, and other courts in this circuit have found that the courts may enjoin the government from re-detaining a Petitioner prior to their actual detention where Petitioner-Plaintiff presents sufficient facts to show that their threat of re-detention is more than hypothetical. *Cortez Morales v. Albarran et al,* No. 4:25-cv-09241, 2025 WL 3013787 (N.D. Cal. Oct. 28, 2025); *See Diaz v. Kaiser*, Dkt. No. 35, No. 25-cv-05071 (N.D. Cal. Sep. 16, 2025); *HIREN JAGDISH PATEL, Plaintiff, v. POLLY KAISER, et al., Defendants. Additional Party Names: Immigr. & Customs Enf't, U.S. Dep't of Homeland Sec.*, No. 25-cv-07667, 2025 WL 4110423, (N.D. Cal. Oct. 9, 2025); *Carballo v. Semaia*, No. 5:25-CV-03176-SPG-AJR, 2026 WL 381608, at *5 (C.D. Cal. Feb. 10, 2026) (finding preliminary injunctive relief to "to prospectively enjoin [plaintiff's] re-detention" . . . "presents a live controversy" where plaintiff presented "sufficient facts to show the immediate threat of re-detention.").

Here, Petitioner Plaintiff is aware of DHS's policy of detaining noncitizens without a pre-deprivation hearing as Petitioner-Plaintiff, is aware of the stories of noncitizens being unlawfully detained, ECF 10 at 2, and specifically identified the provisionally certified class in *Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 3691938, at *8 (N.D. Cal. Dec. 19, 2025). Petitioner-Plaintiff believes they are covered by the class articulated in the *Garro Pinchi v. Noem*; yet, even if they are not, Petitioner-Plaintiff has demonstrated an awareness of the practice which puts them in fear that their own liberty is at risk. Courts in this district have granted the same relief requested here, injunction based on a concern of detention if the noncitizen appears for a non-routine ICE check-in, even after the class certified in *Garro Pinchi* which has enjoined the detention of noncitizens without pre-deprivation hearings in this district. *See He v. Lyons*, 3:25-cv-10639-JSC (N.D. Cal. Feb 03, 2026). This case is also distinct from that of an ordinary check-in because this check-in was scheduled during a time that Petitioner-Plaintiff was not ordinarily scheduled to check-in and followed a period of miscommunication due to technical difficulties. ECF 2 at 3. Petitioner-Plaintiff states that for the past two weeks check-ins are usually set on Mondays. *Id.* Petitioner-Plaintiff filed their temporary restraining order application the day before their next

ISAP check-in which was set for a Friday. *Id.*  The sudden and apparently escalated supervision of Petitioner-Plaintiff raised their concerns.  During their last check-in, Petitioner-Plaintiff was informed that supervision would be "escalated," without being given an explanation why.  ECF 10 at 2.  Petitioner-Plaintiff is aware of circumstances where similarly situated noncitizens have been unlawfully detained.  *Id.*  This Court previously granted a motion for temporary restraining order where the plaintiff was aware that other noncitizens had received a similar message to report from ISAP who were subsequently summarily incarcerated or reincarcerated when they complied. *See Diaz v. Kaiser*, Dkt. No. 4, No. 25-cv-05071 (N.D. Cal. Sep. 16, 2025).

The cases Respondent cites do not compel a different outcome.  In *Clapper v. Amnesty International*, the plaintiffs claimed that they would be injured because they feared that the federal government would intercept their communications with foreign contacts using its authority under 50 U.S.C. § 1881a. *See* 568 U.S. 568 U.S. 398, 401 (2013).  The Court found the plaintiff's alleged injury to be premised on "highly speculative fear" which relied on assumptions about a series of unforeseeable events.  *Id.* at 410.

In *Lujan v. Defenders of Wildlife*, the Supreme Court held that plaintiff environmental groups lacked standing to challenge a regulation implementing the Endangered Species Act.  504 U.S. 555, (1992).  The *Lujan* plaintiffs provided little evidence that their members would actually visit the areas which would be affected by the environmental regulations and, thus, did not demonstrate a "concrete" injury.  *Id.* at 564.

Given that Petitioner-Plaintiff has articulated an awareness of the practices and policy which give rise to their concern of unlawful detention, a change in tactics employed by immigration officials consistent with that practice, and a recognition by this Court of the very same policy and practice used to detain other noncitizens in this district, the Court finds that Petitioner-Plaintiff's concern about the prospect of being detained without a new finding of risk of flight or danger to the community is sufficiently concrete to constitute an injury in fact under Article III.

### B.    Plaintiff's Claims are Ripe

Next, Respondent argues that Petitioner-Plaintiff's claim is not ripe because they are not in

custody and because they seek to prevent a future arrest and detention.

The Supreme Court has "very liberally construed the 'in custody' requirement." *Maleng v. Cook*, 490 U.S. 488, 492 (1989). This liberal construction provides that "[a] person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

Petitioner-Plaintiff is subject to conditional release that restrains them in significant ways. At one time, Petitioner-Plaintiff was required to wear monitoring bracelet to track their location. Albino Tito Decl. ¶ 36.  These conditions "significantly confine and restrain [Petitioner-Plaintiff's] freedom" and squarely place them "in custody" for the purpose of federal habeas corpus jurisdiction.  *Jones*, 371 U.S. at 243.  Given Petitioner-Plaintiff's present custodial arrangement, they may bring a habeas challenge to "attack future confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).  Because Petitioner-Plaintiff challenges a future unlawful re-detention prior to removal the Court considers the petition for habeas corpus relief ripe. *Sun v. Santacruz*, No. 5:25-cv-02198, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (collecting Ninth Circuit district court cases deciding the same).

Regarding Respondents second argument on ripeness, while courts must "dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Chandler v. State Farm Mt. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010), as discussed above, Petitioner-Plaintiff's fear of detention is not too speculative for the Court to rule on.  Sufficient facts have been presented to create a live controversy for the Court to decide.

For the reasons stated, the Court finds that Petitioner-Plaintiff presents a justiciable claim.

**C.    Petitioner-Plaintiff will Likely Succeed on the Merits of Their Claim**

Petitioner-Plaintiff will likely Succeed on the Merits of their claim.  Under the "sliding scale" variant of the same standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's

favor,' and the other two Winter factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of the hardships tips sharply" in his favor. *Id.* The protections of the Constitution apply to all persons within the jurisdiction of the United States, including citizens and non-citizens alike, and including those persons who are present in the United States without authorization. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) (noting that "[a]liens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments"). Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In accordance with the reasoning of these cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—(1)"the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," id. at 335—support requiring a pre-detention hearing for Petitioner-Plaintiff.

### D. Petitioner-Plaintiff will Likely Suffer Irreparable Harm in the Absence of Temporary Relief

Petitioner-Plaintiff likely faces irreparable injury and harm to liberty absent relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed above, Petitioner-Plaintiff has a constitutional liberty interest in remaining out of custody and free from civil detention. "Just as people on pre-parole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond." *Ortega*, 415 F. Supp. 3d at 969. "When an alleged deprivation of a constitutional right is involved, most courts

8

hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up).

### E.    The Balance of Equities and the Public Interest Weigh in Favor of Granting Relief

The final two *Winter* factors, the balance of the equities and public interest, merge and weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up) (internal quotations omitted). Petitioner-Plaintiff faces significant harm absent relief, while the harm to Respondents is minimal. Respondents, at most, face a short delay in detaining Petitioner-Plaintiff and is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

## IV.    CONCLUSION

For the foregoing reasons, the **GRANTS** Petitioner-Plaintiff's Motion for Temporary Restraining Order to preserve the status quo pending further briefing and a hearing on this matter.

Respondents, and all their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them, are hereby **ENJOINED** and **RESTRAINED** from re-arresting and re-detaining Petitioner without a hearing.

The Petition, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and Petitioner-Plaintiff shall file proof of such service by no later than **March 16, 2026**.

//

//

//

United States District Court
Northern District of California

9

Respondents are ORDERED TO SHOW CAUSE before Judge Trina L. Thompson on **Thursday, March 26, 2026 at 3:00 p.m. via videoconference** why a preliminary injunction should not issue.  Respondents shall file a response to Petitioner-Plaintiff's motion by no later than **March 20, 2026**.  Any reply should be filed by **March 24, 2026**.

Petitioner shall not be deported, removed, or otherwise transferred outside the United States until further Order of this Court.

IT IS SO ORDERED.

Dated: March 13, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

10